IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| MARILYN VENTON, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| | ) | No. 13-cv-7725 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| MILLION DOLLAR ROUND TABLE, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Marilyn Venton ("Venton"), filed a pro se complaint alleging employment discrimination based on race against defendant Million Dollar Round Table ("MDRT").[1] Venton alleges that MDRT failed to promote her, failed to stop harassment, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. MDRT moves for summary judgment [42] in its favor, arguing that Venton's claims are time-barred and unsupported by the evidence in the record demonstrating that MDRT is entitled to judgment as a matter of law. For the reasons that follow, the Court grants the motion.

**Background**

Local Rule 56.1 mandates the procedure for submitting and responding to motions for summary judgment. In accordance with LR 56.2, MDRT filed and tendered to Venton a Notice to Pro Se Litigants Opposing Summary Judgment. Venton failed to comply with LR 56.1(b)(3) by responding with citations to the record to MDRT's Statement of Undisputed Material Facts and therefore the Court deems admitted those facts contained in MDRT's LR 56.1(a)(1)(3) Statement of Undisputed Material Facts. *See e.g., Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir.

---

[1] The Court's standard procedure is to refer to all individuals by their last name only for simplicity and equity.

1

2010). Although Venton did provide a statement of additional facts as required by LR 56.1(b)(3)(C), she did not support any of the statements with citations to the record. The Court will consider those statements as it would any other unsupported proposed statement of fact.

The following facts are undisputed for purposes of ruling this motion. MDRT is an association of life insurance and financial services professionals with approximately 35,000 members. (Dkt. 44, MDRT's Statement of Undisputed Material Facts, at ¶3). Marilyn Venton was an employee of MDRT from August 2, 1999, until her resignation on August 2, 2013. (*Id.* at ¶6). Venton was a Customer Service Representative until January 2001 when she became a Call/Contact Center Representative until her resignation in 2013. *Id.* Prior to May 2012, Human Resources Director Jackie Campa was Venton's direct supervisor. In 2012, Laura Good replaced Campa as Human Resources Director and Venton's supervisor. Call Center Manager Kristin Mikrut supervised Venton from June 2013 until her resignation in August 2013.

Venton's primary job responsibilities were answering member and applicant questions and e-mailing or faxing membership information. She also covered the reception desk from 7:00 a.m. to 8:30 a.m. and during lunches and breaks. (*Id.* at ¶¶10-11). Jo Rizzuto (white) worked at the reception desk from 8:30 a.m. until 5:00 p.m. Call Center Representative Jennifer Toribio (Hispanic) worked with Venton in the call center and also sometimes covered the reception desk.

MDRT conducted annual performance reviews from 2006 through 2011. Each of Venton's performance reviews stressed the need for improved teamwork and communication. In 2009, Human Resources Director Jackie Campa held a meeting with Venton, Rizzuto, and Toribio to discuss the conflicts that were reflected in the 2009 performance reviews. (*See id.* at ¶¶15-17). During the meeting, all three women relayed past wrongs. Some of Venton's complaints were that Rizzuto had told her to "respect her elders"; that Rizzuto had once said the word "plantation" as she walked away; that Rizzuto was sarcastic to her; and made comments when she changed her hairstyle

2

and once asked her if black people need to wash their hair every week. (*See id.* at ¶¶18, 21-23). In response to her 2011 performance review, Venton submitted a memo stating that Rizzuto wiped the reception desk and changed the telephone handset after Venton or Toribio sat at the desk and Venton considered this behavior racist. (*Id.* at ¶ 28). Venton also relayed in the memo an incident in which Rizzuto said "black people don't need reparations. Italians were slaves too" and asked when MDRT was going to hire more Italians. (*Id.* at ¶ 29). Rizzuto had her own handset that she brought with her and used at the reception desk that had an attachment that allowed her to cradle the handset between her ear and her shoulder. Everyone else that covered the reception desk had to use the handset provided by MDRT.

Campa met with Venton to discuss the memo that she submitted in response to her 2011 performance evaluation. Venton described Campa as "sincere," that she "took everything said to heart," and told Venton she would "deal with it." (*Id.* at ¶ 34). Venton never again raised any complaints of racial discrimination or harassment to Campa or to Laura Good, who took over as Human Resources Director for Campa.

In May 2013, MDRT sent an e-mail to staff regarding three job postings: (1) Member Services Processing Manager, (2) Member Services Coordinator, and (3) Member Services Specialist. Venton told Laura Good, the Human Resources Director, that she was interested in the Member Services Coordinator position. (*Id.* at ¶ 41). Good asked Venton to send her an e-mail explaining her interest in and qualifications for the position. (*Id.* at ¶ 42). Venton never sent the e-mail that Good had requested. (*Id.* at ¶ 43). On June 17, 2013, Venton e-mailed Good asking her when they could meet to discuss the position to which Good responded that they had not yet started the process. (*Id.* at ¶¶ 44-45). On July 15, 2013, MDRT hired Jennifer Fisher for the Membership Services Coordinator position. (*Id.* at ¶ 46). The Membership Services Coordinator position responds to membership inquiries, contacts potential members regarding problems with their applications,

3

maintains a database with member information, and researches ways to improve member communication. (*Id.* at ¶ 39). The Coordinator also acts as a liaison to the Ethics Committee and maintains an ethics log. (*Id.* at ¶ 40). Fisher had previous experience working in the financial aid department of a university processing applications. When MDRT hired Fisher it was in the process of finalizing an online application procedure of the type that Fisher had experience. (*Id.* at ¶ 48).

On July 15, 2013, Venton texted Good to let her know she was ill and would not be coming into work. (*Id.* at ¶ 50). Good responded by text message, asking if Venton had secured coverage for the reception desk. Venton replied that it was not her responsibility to find someone to cover for her at the reception desk. (*Id.* at ¶¶ 51-52). On July 16, 2013, Good and Human Resources Coordinator Naadia Chaudry met with Venton to discuss the text message exchange because Good believed Venton's response was unprofessional. (*Id.* at ¶ 53). Venton testified that she did not appreciate Good's tone of voice in the meeting. (*Id.* at ¶ 54). On July 17, 2013, Venton submitted a memo to Good stating that "it almost feels like I am being discriminated against" because Good had mentioned that Venton had been late to work on some occasions during the meeting the previous day. (*Id.* at ¶ 58). Venton testified that Rizzuto and Toribio were often late, but she did not know if Good had ever spoken to them about their tardiness. (*Id.* at ¶ 59). Venton was never disciplined for tardiness. (*Id.* at ¶ 60). On July 23, 2013, Venton met with Good and informed her of her resignation citing health reasons. (*Id.* at ¶ 65). During her exit interview on August 2, 2013, Venton gave Good top ratings as a supervisor because she was "easy to get along with". (*Id.* at ¶ 69).

**Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper where the pleadings, depositions, admissions and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. *Fed. R. Civ. P. 56(a); Celotex v. Catrett*, 477 U.S. 317, 324 (1986). When considering a summary judgment motion, the

4

Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005).

**Discussion**

At the outset the Court notes that Venton testified, "it's all about respect." (Dkt. 45-1, Venton Dep. Tr. at 154:5). While she was referring specifically to her impression that Laura Good was not being respectful in her tone when speaking to her, this Court understands from reviewing all the testimony that Venton felt she was not being respected at MDRT. However, not every perceived or even actual insult is actionable in federal court. For the reasons discussed herein, there is no genuine issue of material fact and MDRT is entitled to judgment as a matter of law on Venton's retaliation, failure to promote, and hostile work environment claims.

*1. Retaliation*

MDRT argues that Venton's retaliation claim is time-barred. Venton did not respond to this argument in her opposition brief. Retaliation claims, whether brought under Title VII or Section 1981, must be filed within a certain period of time in order for this Court to consider the merits of the claim. For claims brought under Title VII of the Civil Rights Act of 1964, a plaintiff must file a charge with the Equal Employment Opportunity Commission within 300 days of the date of the alleged violation. 42 U.S.C. §200e-5(e)(1). Plaintiffs have four years to file claims under Section 1981. *Jones v. R. R. Donnelley & Sons Co.,* 541 U.S. 369, 383 (2004).

According to her deposition testimony, Venton's retaliation claim is based on her position having moved to the administration department for a month and for the lack of a salary increase in 2008 or 2009 even though no other call center representative received an increase that year. (Dkt. 45-1 at 45:12-46:10; 46:22-47:2). Venton filed her EEOC charge on October 3, 2013, and her complaint in this case on October 29, 2013. Venton would have learned whether she received an annual pay increase at the time of her performance reviews in August each year. (See Dkt. 45-4,

5

Laura Good Decl., at ¶ 6; Dkt. 45-2, Venton's Annual Performance Reviews). Accordingly, Venton's EEOC charge was filed more than 300 days from August 2009 and her retaliation claim pursuant to Title VII is time-barred. Her Section 1981 claim for retaliation is also untimely since it was filed more than four years after August 2009. This Court therefore need not address the merits of Venton's retaliation claim.

*2. Failure to Promote*

MDRT argues that it is entitled to summary judgment in its favor on Venton's failure to promote claim because she never applied for the position and therefore MDRT did not reject her. Venton asserts that MDRT failed to consider her application based on her race and improperly hired a white woman to fill the position.

For every discrimination claim, a plaintiff may proceed under either the direct or indirect methods of proof. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Under either method of proof, however, Venton must show that "she applied for and was qualified for the position sought [and] she was rejected for that position." *Johnson v. General Bd. of Pension & Health Benefits of the United Methodist Church*, 733 F.3d 722, 728 (7th Cir. 2013) (quoting *Fischer v. Avanade, Inc.*, 519 F.3d 393, 402 (7th Cir. 2008)); *see also Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 558-59 (7th Cir. 2004) (affirming summary judgment for employer where employee did not apply for the position at issue).

Here, the undisputed evidence shows that Venton did not apply for the position of Membership Services Coordinator. Venton admits that, when she expressed her interest in the position, Laura Good asked her to put in writing via e-mail her interest in and qualifications for the position. Venton admits that she never sent the e-mail. This Court finds that Venton did not actually apply for the Membership Services Coordinator position and therefore MDRT cannot have rejected her for that position. Even if Venton could show that she had applied for the position, there is no

6

evidence in the record that MDRT hiring Fisher for the position was in any way racially motivated. MDRT is thus entitled to summary judgment on Venton's failure to promote claim.

*3. Hostile Work Environment*

MDRT argues that the facts demonstrate that Venton was not subject to a hostile work environment. In order to prevail, Venton must point to evidence indicating that because of her race, she was subjected to severe or pervasive conduct that created a "subjectively and objectively offensive" work environment, and that there is a basis for employer liability. *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 912 (7th Cir. 2010). The Court looks at the totality of the circumstances to determine whether the conduct is sufficiently severe or pervasive to be actionable, including the frequency of the discriminatory conduct, whether a reasonable person would find it offensive, whether it is physically threatening or humiliating conduct as opposed to verbal abuse, whether it unreasonably interferes with an employee's work performance, and whether it was directed at the victim. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002).

Here, Venton alleges the following conduct created a racially hostile work environment beginning in 2008:

- Jo Rizzuto said she was not going to vote for Barack Obama.

- Venton heard Rizzuto use the word "plantation," but did not know the context.

- Rizzuto used a sarcastic tone when Venton requested vacation.

- Rizzuto made comments relating to Venton's hair, including: "what do black people use in their hair," "is your hair kinky," "what is the grade of your hair," and asked if black people need to wash their hair every week.

- Rizzuto wiped off the reception desk and used her own telephone handset.

7

- Rizzuto told Human Resources Director Jackie Campa that she did not want to sit in the same chair as Venton, and once put cardboard on the chair before sitting down when there was an unidentified liquid on the chair.
- Rizzuto commented that "black people don't need reparations. Italians were slaves too" and asked when MDRT was going to hire more Italians.
- Rizzuto commented on Venton's weight and that she was a single-mother.
- Rizzuto said she did not believe the U.S. Senate needed to be more diverse.
- Laura Good spoke to Venton on one occasion about being late for work.

The conduct complained of must have a racial character or purpose to constitute actionable harassment. *See Luckie v. Ameritech Corp.,* 389 F.3d 708, 714 (7th Cir. 2004); *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999). Arguably, Rizzuto's questions regarding Venton's hair and her opinions on reparations have a racial component. However, racially related questions or comments without the traditional hallmarks of impermissible racial harassment such as slurs, epithets, or overt racial animus or intimidation do not necessarily amount to discrimination. *See Johnson v. City of Fort Wayne,* 91 F.3d 922, 938 (7th Cir. 1996). As stated above, the standard for a hostile work environment is that the conduct must be severe or pervasive. Here, the incidents were not pervasive, occurring over a span of years, which dilutes their offensive effect and diminishes their severity. It is evident from the record that Venton and Rizzuto did not get along, indeed Rizzuto may not have liked Venton personally, yet such workplace discord between co-workers is not necessarily discriminatory. The comments were not physically threatening or intimidating either by their frequency or their content. Furthermore, the only evidence that Venton's work was affected in any way is her testimony that she did not want to work at the reception desk. The record otherwise reflects that Venton liked working at MDRT, praised her supervisor Laura Good and generally referred to MDRT as a good employer.

Even if this Court found that the incidents outlined above rose to the level of severe and pervasive harassment, there is no basis for employer liability in this case. When a co-worker, such as Rizzuto, harasses an employee, the employer is liable only if the employer is negligent in discovering or remedying the harassment. *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439, 186 L. Ed. 2d 565 (2013). Venton raised her issues with Rizzuto in her performance evaluations in 2009 and 2011. Jackie Campa, then Human Resources Director, held a meeting and addressed the issues with Venton and her co-workers Rizzuto and Toribio. According to Venton's own testimony, Campa was sincere and took everything she said to heart. (Dkt. 45-1 at 95:6-13). Venton continued to work at MDRT through August 2013, but made no other complaints about racial harassment after 2011. Venton admitted that MDRT has an anti-harassment policy and that she had a copy of it. This Court finds no basis for employer liability. Accordingly, even when viewed in the light most favorable to Venton, there is no genuine issue of material fact as to her racial harassment claim.

**Conclusion**

Based on the foregoing, this Court grants MDRT's motion for summary judgment [42] and finds no genuine issue of material fact.

IT IS SO ORDERED.

Date:

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

9